Curia,,per Johnson, Ch.
The case for the consideration of the court, may be thus stated. The late Mrs. Thurston was, during her coverture, seized of a lree-hold estate of inheritance in fee in a certain tract of land, for the partition of which this bill is filed. Her husband survived her, and, whether before or after her death is not stated, nor is it material, he sold and conveyed all his interest in the land to a person not named in the brief, and he, the purchaser, sold and, conveyed the same interest to Josiah Dickinson, deceased, under whom the defendants claim as his heirs or distributees. The complainants are the children of Mrs. Thurston and claim as her heirs or distributees.
There is no question about the relative rights of these parties. According to the Act providing for the distribution of intestates’ estates, on the death of Mrs. Thurston, two thirds of the land descended to the complainants, her children, and the remaining one third to her husband, to which the defendants, his alienees, are entitled. But the defendants, or those from whom they derive their title, have made improvements on the land in the form of buildings, &c., and the question raised is, whether they are entitled to be paid for those improvements.
The general rule clearly is, that if one of several tenants in commqn, make improvements on the common property, neither the property nor his co-tenants, are chargeable with their value, *318 or the expenses incurred in making them. Thompson vs. Bostick, McM. Eq. 75. In that case the tenant in possession had erected a cotton gin on the premises, and it was held that his co-tenant was not chargeable with any portion of the value. The question was very fully considered in Dillet vs. Whitner, Chev. Eq. 313, in which the rule is distinctly recognized. The case ex parte Palmer, 2 Hill Ch. 215, is referred to as conflicting with these decisions. There the testator devised the premises, an unimproved lot in the city of Charleston, to his wife for life, remainder over, after her death, and appointed Palmer his executor, who, after the death of the testator, married his widow, by which he became tenant during the joint lives of himself and wife. It was wholly unproductive in the condition it was when he entered, and he improved it by erecting buildings thereon at considerable expense, and the court held that he was entitled to the value of the buildings in the condition they were at the termination of the life estate; but the case is put expressly on the ground that the improvements were made before Palmer had any interest in the property, and that as executor he was justified in making such permanent improvements as would render the estate more valuable to all concerned, and therefore the expenses were chargeable on it. But the rule that neither the estate, or the remainder man, is chargeable with the expenses of improvements made by a tenant for life, is distinctly recognized^
But it is said that the indiscriminate application of the rule would often operate as a hardship, and there may be some such cases, but it is impossible,to frame a rule that would meet the particular justice of every case. Men will readily accommodate themselves to any certain and well known rule. No one can accommodate himself to those which are locked up in the breast of the Judge, until the occasion shall call them forth; and upon examining the principles, 'it will be found that the rule which now prevails, is not so unreasonable as it would appear from a superficial view. I will take the case of tenant for life to illustrate it. That estate can only be acquired by purchase or devise. If by purchase, the tenant knows that he is not to be reimbursed for any improvements he may make; and if they are necessary to render the estate productive, in making his purchase, he estimates the value accordingly, and takes the risk as to the duration of the estate, and of the amount of the profits, and whether he make a profit or a loss, he must abide it, as the result of a speculation, which he has voluntarily entered into. Let us look *319 at the other side of the question, and suppose the tenant entitled to improve and charge the expenses on the estate. The improvements might be such as the remainder-men did not desire ; so inferior in quality as to render others necessary in using the estate for the purposes to which he desires to appropriate it, or they might be of so great value, that the remainder-man might not be able, and thus force him to sell the estate to pay it, against his will. The same results follow if the estate is acquired by devise. The tenant for life is not bound to accept if he cannot render it profitable, unless at the expense of the remainder-man,'and if he can do that, the remainder-man would be at his mercy. The case of the tenant in common, is even stronger against the tenant in possession, and such is the case here. He can, at any moment, obtain a severance, and use his own portion as he may think fit, and if he will expend money in the improvement of the common property, he is in no more to be favoured, than one who wilfully spends money in improving his neighbor’s lands, without his consent.
It is therefore ordered and decreed that so much of the circuit decree as declares the defendants entitled to compensation for the improvements, be and the same is hereby reversed.
Donkin, On. concurred.